IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARYANN TUCCI, : | |
| Individually and on behalf of : | |
| her minor children, Isaiah Tucci and : | |
| Jonathan Tucci, and CARMEN TUCCI, : | |
| Individually and on behalf of : | |
| his minor children, Isaiah : | |
| Tucci and Jonathan Tucci, : | |
|      Plaintiffs : | |
|          VS. : | 3:CV-01-2337 |
| : | (CHIEF JUDGE VANASKIE) |
| JAMES M. DIXON : | |
|      Defendant : | |
| : | |
| : | |
| PATRICIA DUKSTA, : | |
|      Plaintiff : | |
| : | |
|          VS. : | |
| : | |
| DAVID COFFMAN : | |
|      Defendant : | |

## MEMORANDUM

This matter is before the Court on Plaintiffs' Motion for judgment as a matter of law and/or for a new trial following an adverse jury verdict. Maryann Tucci, along with her husband, Carmen, and their minor children (sometimes referred to collectively as the "Tucci Plaintiffs"), and Patricia Duksta had presented to the jury civil rights and state law claims arising out of

separate encounters with members of the City of Hazleton Police Department.[1]  As to the Tucci claims, the jury found that Maryann Tucci had not shown that Officer Dixon had used unreasonable force against her or engaged in a malicious prosecution of her.  The jury further found that Officer Dixon had entered the Tucci home with consent, thereby undermining the Tucci Plaintiffs' Fourth Amendment illegal entry claim.  With respect to the claims asserted by Plaintiff Duksta, the jury found that she had failed to prove that Defendant Coffman had used unreasonable force against her or engaged in a malicious prosecution of her.

The following issues are presented on Plaintiffs' post-trial Motion:

(1) Whether the court erred in not directing judgment as a matter of law in favor of the Tucci Plaintiffs based upon Defendant Dixon's entry into their home, and in allowing the jury to determine whether consent could be inferred from the totality of the circumstances, including the presence of another law enforcement officer in the Tucci home when Dixon entered it?

(2) Whether the evidence, as a matter of law, compelled the conclusion that Officer Dixon had used unreasonable force against Maryann Tucci?

(3) Whether the court erred in refusing to allow Plaintiffs to impeach Defendants based upon alleged inconsistent statements made by their attorney in answering the Complaint, even

---

[1]Although arising out of separate incidents, the Tucci and Duksta claims were joined on the basis of municipal and supervisory liability claims asserted against the City of Hazleton and its Police Chief, Ed Harry, respectively.  Those claims were to be tried in the event that Plaintiffs established liability of the individual officers.  Because Plaintiffs did not prevail against the individual officers, Hazleton and its police chief were entitled to judgment in their favor.

though Plaintiffs conceded that they had no evidence that Defendants ever reviewed the Answer to the Complaint or otherwise adopted their attorney's statements?

(4) Whether the Court erred in instructing the jury that the existence of probable cause on at least one of the criminal charges brought against a Plaintiff would be sufficient to defeat the Plaintiff's malicious prosecution claim?

The issues have been fully briefed.  In addition, oral argument was conducted on July 25, 2005.  For the reasons that follow, Plaintiffs' motion will be denied.

## DISCUSSION

Each of the issues presented by Plaintiffs, along with the evidence germaine to that issue, will be assessed separately.  In undertaking this review, this Court will, as required, view the evidence in the light most favorable to Defendants, giving them "the advantage of every fair and reasonable inference."  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993).

### A.  The Tucci Claim of Illegal Entry Asserted Against Officer Dixon

The Tucci Fourth Amendment illegal entry claim was considered by the jury in the context of three conflicting versions of the incident.  On June 20, 2001, Constable Joseph Corradini attempted to serve an arrest warrant upon Louis Tucci, son of Plaintiffs Carmen and Maryann Tucci, for unpaid traffic fines.  Shortly after Constable Corradini arrived at the Tucci residence, Louis Tucci appeared and informed the Constable that he would retrieve his credit

card from the Tucci home to pay the fines. Louis Tucci entered the home, but he fled the scene through the back door.

At the request of the responsible District Magistrate, Constable Corradini returned to the Tucci residence during the evening of June 20, 2001, accompanied by Officers Dixon and Coffman. Officer Coffman watched the rear of the property, and was not involved in the encounter. The parties are in agreement that Constable Corradini went to the front door of the Tucci home while Officer Dixon concealed himself from view. The stories diverge considerably at this point.

According to Maryann Tucci, she met Constable Corradini at the front door. She refused his request to search the home to see if her son, Louis, was present, claiming that he did not live there. She also testified that Corradini did not enter the home before Officer Dixon appeared at the front door. Instead, he called to Officer Dixon, and both Corradini and Dixon entered her home together, without any expression of consent on her part.[2]

Constable Corradini testified that he remained outside the screen door on the front porch of the property at all times during the encounter. He said that when Maryann Tucci did not seem to understand the import of the warrant for her son's arrest, he summoned Officer Dixon for assistance. He testified that he and Officer Dixon remained outside the home at all times.

---

[2] Notably, the Tucci Plaintiffs had not asserted a Fourth Amendment illegal entry claim against Constable Corradini, even though Maryann Tucci testified that she had not consented to his entry.

4

In response to questioning from the Court, Constable Corradini stated that he could not recall whether he had entered the home at any time during the incident. He also testified, however, that he would only enter a home if consent had been secured.

Officer Dixon's recollection of the event was that, when summoned for assistance, he went to the front door and saw Corradini standing inside the home, conversing with Maryann Tucci. Officer Dixon then entered the home. He admitted that he did not ask permission to enter. He also testified, without contradiction, that neither Maryann Tucci nor her husband, Carmen, who was present, objected to his presence inside the home. Officer Dixon explained that when he inquired as to whether the premises could be searched to ascertain whether Louis Tucci was present, Maryann Tucci said that she did not want to discuss the matter in front of her other children. Officer Dixon testified that he then suggested that they go outside to discuss the matter on the front porch. According to Dixon, Maryann Tucci then followed him and Constable Corradini out to the front porch, where a verbal altercation ensued.

At the conclusion of the trial, the Tucci Plaintiffs moved for judgment as a matter of law on the Fourth Amendment illegal entry claim, asserting that the absence of evidence that any member of the Tucci family consented to Dixon's entry into the home compelled a liability determination in their favor. The Tucci Plaintiffs' motion was denied, and the matter was submitted to the jury with the following instructions:

> [Y]ou must decide whether defendant Dixon "crossed" the "threshold" of the Tucci home without consent. . . .

5

> In deciding whether any person provided "consent" for defendant Dixon to enter the Tuccis' home, you must also know that consent cannot be implied by mere acquiescence. In other words, in order to constitute consent, it must be explicit. There is no consent if defendant Dixon entered the home without specific consent. . . .
>
> To sum up, you must decide . . . if Maryann Tucci or another plaintiff explicitly gave consent to defendant Dixon to enter the home.

(Jury Charge, Dkt. Entry 77, at 19, 20.)

During deliberations, the jury asked the Court the following questions:

> (1) Can consent be implied by the presence of the Constable already being in the home?
>
> (2) Can consent given to [the] Constable be extended to the officer since the Constable requested the officer's presence?

After conferring with counsel, and consulting pertinent case law, the Court determined to respond to the jury's question in a manner consistent with the holding in Pavao v. Pagay, 307 F.3d 915, 919-21 (9th Cir. 2002). Specifically, the jury was essentially instructed that Officer Dixon could not show consent to enter from Plaintiffs' failure to object to his entry. The jury was informed that a defendant, however, can justify an entry into a home on the basis of implied consent, meaning consent inferred from the conduct or actions of the person in charge of the place. The jury was further instructed that implied consent could not be inferred lightly. Consistent with Pavao, the jury was told that "'every encounter has its own facts and its own dynamics,'" id. at 919, and no general rule exists as to when consent may or may not be

implied. The jury was told that it needed to consider the totality of the circumstances apparent to the officer at the time the entry was made, and that it could take into account the facts that Constable Corradini was already in the home when Officer Dixon entered and that Constable Corradini had called for Officer Dixon's assistance while Constable Corradini was inside the home, provided, of course, that the jury credited that version of the incident. This supplemental instruction was given over Plaintiffs' objection on the basis that consent can never be implied, but must be explicitly stated.

The Tucci Plaintiffs persist in arguing that consent may never be inferred by a law enforcement officer. Instead, under their view, a law enforcement officer without a search warrant must always ask permission to enter a home, even when a fellow law enforcement officer is already inside, conversing with an occupant in a non-hostile manner.

There is, however, a considerable body of case law recognizing the concept of implied consent, which is to be decided on the basis of all the circumstances apparent to the law enforcement officer. See, e.g., United States v. Ramirez-Chilel, 289 F.3d 744, 751-53 (11th Cir. 2002); Pavao, 307 F.3d at 919. The supplemental jury instructions were consistent with this decisonal law.

Moreover, viewed in the light most favorable to Defendant Dixon, there was adequate evidence from which a jury could conclude that Officer Dixon would have thought that he had consent to enter. Constable Corradini testified that he would have entered the home only if

permission had been granted.  Officer Dixon observed Constable Corradini inside the home when Officer Dixon arrived at the front door.  The Tucci Plaintiffs did not assert a Fourth Amendment illegal entry claim against Constable Corradini, thus suggesting that he had indeed been given permission to enter, notwithstanding Maryann Tucci's testimony to the contrary. Significantly, Carmen Tucci did not testify at trial, although he was a co-plaintiff who was present at the time of the incident in question.  No objection was voiced by Maryann Tucci when Officer Dixon entered the home.  Given her argumentativeness, as displayed during the encounter that occurred on her front porch a few minutes later, a jury could certainly conclude that she was not the kind of person who would be too meek to tell a police officer that he could not come in or must leave.  Officer Dixon testified that Maryann Tucci followed him and Corradini out to the front porch when Officer Dixon suggested they do so to avoid discussing the matter in front of Maryann Tucci's other children.  At this stage, of course, this testimony must be credited. Under all these circumstances, there were ample grounds for concluding that Officer Dixon could infer consent to enter the home.  See Babb v. Deomampo, 230 F.3d 1366, 2000 WL 1208199, at *1 (9th Cir. 2000).  Accordingly, the Tucci Plaintiffs are not entitled to judgment as a matter of law or a new trial on the Fourth Amendment illegal entry claim.

**B.  Maryann Tucci's Unreasonable Force Claim Against Officer Dixon**

While acknowledging that "[w]hether force used to seize a person was or was not reasonable is generally a jury question," (Brief in Support of Post-Trial Motion, Dkt. Entry 91, at

8

21), Maryann Tucci contends that "on the undisputed facts, it was unreasonable as a matter of law for Dixon to grab Ms. Tucci by the arm, put her in a 'control technique,' pull her from her home, put her arm behind her back, bruise her arms, and put her against a stone wall for at least ten seconds." (Id.)

Were the evidence as one-sided as suggested by Plaintiffs' counsel, judgment as a matter of law may indeed have been warranted.  But viewed in the light most favorable to Officer Dixon, the evidence permitted a finding that Maryann Tucci became belligerent on the front porch of her home.  She refused to calm down.  When she went to return to her house, she remained on the threshold with the screen door open, and then struck Dixon with the screen door at least twice.  It was only then that Officer Dixon used a "soft hand control technique" to subdue her in response to her attack.  It is also noteworthy that, while Maryann Tucci testified that Officer Dixon slammed her against the stone wall of the house three to four times, Constable Corradini flatly denied that version of the event.  Furthermore, Maryann Tucci was unable to explain how Officer Dixon caused bruises on her arms.

The question for the jury to decide was whether Officer Dixon's actions were "objectively reasonable" in light of the facts and circumstances confronting him.  See Saucier v. Katz, 533 U.S. 194, 202 (2001); Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004).  Significantly, the jury was instructed that, if it credited Ms. Tucci's version, then she was entitled to the jury's verdict.  The jury was also told, however, that if it found that the incident occurred

as Officer Dixon contended, then the jury had to decide whether the amount of force used by Officer Dixon was reasonable under the circumstances. It is obvious from the jury's verdict that Maryann Tucci's version was not credited. As noted above, there was ample evidence to support a determination that the amount of force employed was objectively reasonable under the circumstances. Thus, Maryann Tucci is not entitled to judgment as a matter of law on her unreasonable force claim.

C. **Impeachment of Defendants by Answer to Complaint**

Plaintiffs request a new trial on the ground that they were severely prejudiced by the inability to confront the individual Defendants with responses to particular paragraphs of the Complaint as prior inconsistent statements of the Defendants. Plaintiffs wanted to confront Defendants with certain denials of averments for purposes of arguing that the Defendants were not credible witnesses. Plaintiffs rely upon the general principle that a lawyer's response to a pleading is binding on the attorney's client. Plaintiffs' reliance upon this general proposition misses the mark for at least two reasons.

First, Plaintiffs were not precluded at any time from utilizing statements made in the Answer to the Complaint as admissions. And second, Plaintiffs conceded that they were unable to show that either individual Defendant had reviewed the Answer to the Complaint, or otherwise adopted the denials to particular averments. Essentially, Plaintiffs want to convert an agent's statement, binding on the principal as an admission, into a prior inconsistent statement

of the principal himself.

As a general rule, an "[impeaching] statement must be that of the witness to be impeached and not of some other person." Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, 262 F. Supp. 2d 251, 262 (S.D.N.Y. 2003); see also, United States v. Schoenborn, 4 F.3d 1424, 1429 n.3 (7th Cir. 1993) (statement of another person not adopted by the witness could not be used to impeach witness as a prior inconsistent statement under Fed. R. Ev. 613); United States v. Almonte, 956 F.2d 27, 29 (2d Cir. 1992) ("'third party's characterization' of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization"); United States v. Chavez, 979 F.2d 1350, 1355 (9th Cir. 1992) (third party statement not adopted by witness may not be used for impeachment purposes). As one court has observed, "[i]t is an entirely different matter to offer one declarant's statement to impeach the credibility of another witness. Merely offering a contradictory account offered by one witness does not go to another witness's credibility . . . ." United States v. Bao, 189 F.3d 860, 866 (9th Cir. 1999).

Plaintiffs could not meet the foundational requirement of showing that the statements in question were made or adopted by the witnesses themselves. Thus, no error was committed in refusing to allow use of responses to averments of the Complaint as prior inconsistent statements of the witnesses themselves. Accordingly, Plaintiffs are not entitled to a new trial on this ground.

D. <u>The Malicious Prosecution Claims</u>

Plaintiffs' final argument is that they are entitled to a new trial on the malicious prosecution claims because the court erred in instructing the jury that Defendants were entitled to prevail if they established probable cause for either of the charges brought against Maryann Tucci and Patricia Duksta. Plaintiffs argue that a "seizure" of the person, "otherwise reasonable because there is probable cause for some charge, becomes 'unreasonable' when there is not probable cause for all charges." Plaintiffs cite no authority in support of this proposition.

Maryann Tucci was charged with harassment in violation of 18 Pa. Cons. Stat. Ann. § 2709(a)(1), and disorderly conduct, in violation of 18 Pa. Cons. Stat. Ann. § 5503(a)(2). Plaintiff Duksta was charged with public drunkenness in violation of 18 Pa. Cons. Stat. Ann. § 5505, and disorderly conduct, in violation of 18 Pa. Cons. Stat. Ann. § 5503(a)(4). Both Plaintiffs were acquitted of the charges. The jury was instructed that the fact of acquittal did not mean that the prosecutions lacked probable cause, but that the charging officers shouldered the burden of convincing the jury by a preponderance of the evidence that probable cause existed. After explaining the elements of the crimes charged, the Court further instructed the jury that if it found that the charging officer had established probable cause for either of the charges brought by that charging officer, then the jury must find in favor of that charging officer on the malicious prosecution claim. The jury, however, was not asked to make a separate finding on probable cause. Instead, the only questions posed to the jury was whether Plaintiffs separately

established that the charging officers had maliciously prosecuted them, which the jury answered in the negative.

The instruction on probable cause was prompted by the fact that a civil rights malicious prosecution claim is grounded in the Fourth Amendment protection against infringement upon liberty. That is, an essential element of a § 1983 malicious prosecution claim is that "the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005). A restraint on one's liberty without probable cause would offend the Fourth Amendment. If there exists probable cause, then the deprivation of liberty is justified. Because the restraint on liberty remains the same even if probable cause may be lacking for a particular charge, a person has not sustained an actionable wrong where there existed probable cause for at least one of the charges.[3]

It is also significant that Plaintiffs do not argue in support of their motion that the evidence was insufficient to establish probable cause on all charges brought against Maryann Tucci and Patricia Duksta. There certainly was ample evidence from which the jury could find

---

[3] Were the rule otherwise, § 1983 malicious prosecution claims could be pursued whenever a defendant is acquitted of a particular offense, even though he or she is found guilty of multiple charges. In such a scenario, the deprivation of liberty remains the same regardless of the fact of acquittal. Moreover, the restraints on liberty that may support a § 1983 malicious prosecution claim remain the same regardless of the number of charges. In this regard, it should be noted that it is unlikely that Maryann Tucci suffered any deprivation of liberty as that concept was applied in DiBella.

the existence of probable cause for all charges brought.  Accordingly, Plaintiffs are not entitled to a new trial on this ground.

## CONCLUSION

For the reasons set forth above, Plaintiffs' post-verdict motion will be denied.  An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARYANN TUCCI, : | |
| Individually and on behalf of : | |
| her minor children, Isaiah Tucci and : | |
| Jonathan Tucci, and CARMEN TUCCI, : | |
| Individually and on behalf of : | |
| his minor children, Isaiah : | |
| Tucci and Jonathan Tucci, : | |
|   Plaintiffs : | |
|   VS. : | 3:CV-01-2337 |
| : | (CHIEF JUDGE VANASKIE) |
| JAMES M. DIXON : | |
|   Defendant : | |
| : | |
| PATRICIA DUKSTA, : | |
|   Plaintiff : | |
| : | |
|   VS. : | |
| : | |
| DAVID COFFMAN : | |
|   Defendant : | |

## ORDER

**NOW, THIS 23rd DAY OF SEPTEMBER,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT** Plaintiffs' post-verdict motion (Dkt. Entry 89) is **DENIED**.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania